UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
GALVESTON DIVISION

| | | |
|---|---|---|
| ERNESTO MARTINEZ, | § | |
| | § | |
| Plaintiff, | § | |
| VS. | § | CIVIL ACTION NO. 3:13-CV-31 |
| | § | |
| CITY OF TEXAS CITY, TEXAS, | § | |
| | § | |
| Defendant. | § | |

## MEMORANDUM AND ORDER

Plaintiff Ernesto Martinez was a utility worker with Defendant City of Texas City. The City's summary judgment motion in this employment discrimination suit raises the following issues. In terms of whether an adverse action exists, Martinez alleges that he was forced to retire because he is Hispanic; Texas City contends that Martinez voluntarily elected to retire. But Texas City does acknowledge that Martinez faced potential disciplinary measures before his sudden retirement because, in a one-month span, he was at fault for a car accident and had three citizens lodge separate complaints about his behavior. It argues that even if the Court finds that Martinez was constructively discharged, he was terminated because of those infractions, not because of his national origin.

I.   **BACKGROUND**[1]

**A. Martinez's Work History**

Martinez, a Hispanic male, began his employment in Texas City's Utilities Department in 2001. Texas City records indicate that prior to April 2011, he received two warnings for violations of City rules and policies: one for insubordination after failing to control his temper, and one for neglect of duty. Docket Entry No. 14-9 at 1–2. Then in April 2011, one month before he was eligible to retire, three citizens made separate complaints about his behavior while performing City duties. One citizen complained that he was rude and disrespectful towards her. Docket Entry No. 8-2 at 1. Another complained that he used obscene language during a contentious encounter with her over the placement of a meter box. Perhaps most egregiously, the third citizen complained that Martinez urinated in a yard behind her home.

When Martinez's supervisor, Kenneth DeWitt, asked him about these complaints, Martinez acknowledged interacting with the citizens but denied that he was rude to the first or that he used obscene language in the altercation with the second. At his deposition, he clarified that after he told the first citizen that he was not authorized to do what she had asked of him, she spun her car's tires to throw rocks at him. Docket Entry No. 14-8 at 4. He flatly denied the third complaint

---

[1] Given the summary judgment posture, the following recitation of facts resolves all credibility determinations in Martinez's favor.

that he urinated in someone's yard. *Id.*

Apart from these citizen complaints, Martinez was also in a car accident while driving a City vehicle. On April 27, he backed out of Texas City's parking lot in a wide arc and hit a parked car. Immediately after he hit the car, he asked the coworker who was riding with him if someone saw the accident. The coworker responded that they should stay and call their supervisor, DeWitt, to report what happened. Martinez stayed at the scene and reported the accident. Docket Entry No. 14-8 at 5.

On April 28, Martinez met with Todd Hoover, Texas City's Director of Utilities, and DeWitt. During this meeting, Hoover told Martinez that "since you are almost 60 years old, you can either retire, or we are going to terminate you effective today." Docket Entry No. 14-4 at 2. Martinez immediately chose retirement. He began receiving full retirement benefits when his retirement went into effect on May 31.

## B. Martinez's National Origin Discrimination Claim

Martinez asserts that Texas City violated Title VII by forcing him to retire because of his national origin.[2] He presents evidence that three non-Hispanic Texas City employees who were involved in minor car accidents, like he was,

---

[2] Martinez apparently told the Texas Work Force Commission that he was discriminated against because of his age, not because of his national origin. Docket Entry No. 15 at 2. But because this case can be decided on other grounds, the Court need not address this exhaustion issue, which was only initially raised in Texas City's reply brief in support of its summary judgment motion.

retained their positions with Texas City. Those three employees are: (1) Dewitt, an African-American, who was in a car accident in May 2011; (2) Sean Wallace, an African-American, who was involved in two car accidents; and (3) Darrell Billiott, an Indian-American, who was in a car accident in August 2008. Texas City argues that the three employees are not appropriate comparators because, in contrast with Martinez, no citizens complained about their behavior.

## II.  STANDARD OF REVIEW

When a party moves for summary judgment, the reviewing court shall grant the motion "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts on questions of fact must be resolved in favor of the party opposing summary judgment. *See Evans v. City of Houston*, 246 F.3d 344, 348 (5th Cir. 2001) (citation omitted).

## III.  DISCUSSION

### A. *McDonnell Douglas* Framework

"Because direct evidence [of discrimination] is rare," the *McDonnell Douglas* burden-shifting framework, under which courts analyze circumstantial evidence of discrimination, typically determines whether such claims survive

summary judgment. *Portis v. First Nat'l Bank of New Albany*, 34 F.3d 325, 328 (5th Cir. 1994). Under *McDonnell Douglas*, the plaintiff first has the burden to establish a prima facie case of discrimination. *Bryan v. McKinsey & Co.*, 375 F.3d 358, 360 (5th Cir. 2004) (quoting *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 142 (2000)). If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the allegedly discriminatory action. *Id.* (quoting *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802 (1973)). If a defendant advances such a justification, then the burden shifts back to the plaintiff to demonstrate that the proffered reason is not the true reason for the action, but rather is a pretext for discrimination. *Reeves*, 530 U.S. at 143 (citing *Tex. Dep't of Cmty. Affairs v. Burdine*, 450 U.S. 248, 253 (1981)).

To establish a prima facie case, Martinez must show that he "(1) is a member of a protected class; (2) was qualified for the position; (3) was subject to an adverse employment action; and (4) . . . that other similarly situated employees [who are not members of the same protected class] were treated more favorably." *Bryan*, 375 F.3d at 360 (citing *Okoye v. Univ. of Tex. Houston Health Sci. Ctr.*, 245 F.3d 507, 512–13 (5th Cir. 2001)). Under the fourth requirement, "an employee who proffers a fellow employee as a comparator [must] demonstrate that the employment actions at issue were taken 'under nearly identical circumstances.'"

*Lee v. Kan. City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009) (quoting *Little v. Republic Ref. Co.*, 924 F.2d 93, 97 (5th Cir. 1991)). A number of factors help determine whether a proposed comparator's actions are similar enough:

> The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories. And, critically, the plaintiff's conduct that drew the adverse employment decision must have been nearly identical to that of the proffered comparator who allegedly drew dissimilar employment decisions.

*Id.* (internal quotation marks and footnotes omitted).

Often the most important factor is the similarity of the comparators' conduct to that which led to the plaintiff's termination. *See Hernandez v. Yellow Transp., Inc.*, 670 F.3d 644, 659 (5th Cir. 2012) (citing *Lee*, 574 F.3d at 260). "If the 'difference between the plaintiff's conduct and that of those alleged to be similarly situated *accounts for* the difference in treatment received from the employer,' the employees are not similarly situated." *Lee*, 574 F.3d at 260 (emphasis in original) (quoting *Wallace v. Methodist Hosp. Sys., Inc.*, 271 F.3d 212, 221 (5th Cir. 2001)). The conduct must be comparable not only in terms of how serious the offenses were; the wrongful acts themselves must be "nearly identical" to each other. *See Perez v. Tex. Dep't of Criminal Justice*, 395 F.3d 206, 213, 215 (5th Cir. 2004) (vacating a verdict finding discrimination in which the jury instruction suggested

that "comparably serious misconduct was by itself enough to make employees similarly situated").

### B. Adverse Employment Action

Texas City disputes the third requirement of Martinez's prima facie case: that he even suffered an adverse employment action. Texas City argues it told Martinez that he would be subject to some disciplinary measures, but had not yet decided what those measures would be. Faced with the possibility of disciplinary measures, Martinez then immediately offered to retire. This stands in contrast with Martinez's account; he claims he was told to retire immediately or face termination. Such a situation could very well constitute constructive discharge—an adverse employment action—which occurs when "an employee has quit [his] job under circumstances that are treated as involuntary termination of employment." *Haley v. Alliance Compressor LLC*, 391 F.3d 644, 649 (5th Cir. 2004) (citing *Young v. Sw. Saving & Loan Ass'n*, 509 F.2d 140, 144 (5th Cir. 1975)). But another ground exists for deciding the summary judgment motion, so the Court need not resolve this issue.

### C. Martinez's Comparators Did Not Engage in Nearly Identical Misconduct

Martinez's claim fails on the final requirement of his prima facie case: whether similarly situated non-Hispanics with "nearly identical" conduct issues were forced to retire like he was. The employees that Martinez offers as

comparators were in car accidents of roughly the same severity as his. And they all retained their positions after those accidents. But Martinez presents no evidence that those employees had any citizen complaints lodged against them, let alone three in one month. Although the Fifth Circuit has cautioned that "nearly identical" should not be construed as synonymous with "identical," the standard for nearly identical conduct remains a high one, and Martinez cannot meet it on these facts.[3] *See Lee*, 574 F.3d at 260, 260 n.23 (citing unpublished cases showing that even minor differences in conduct are enough to make employees dissimilarly situated); *see, e.g.*, *Bouie v. Equistar Chems. LP*, 188 F. App'x 233, 237 (5th Cir. 2006) (concluding that because the plaintiff "was discharged for failure to comply with two safety protocols, his situation is not nearly identical to that of the white employees who were not fired for failure to comply with only one safety protocol"); *Brown v. CenturyTel Inc.*, 2008 WL 2680190, at *5 (W.D. La. July 2, 2008) (holding that employee who received 15 customer complaints not "nearly identical" to employees who received far fewer customer complaints).

Martinez attacks the accuracy of the citizens' complaints; he says he was never rude to one citizen, never cursed at another, and never urinated in the vicinity of the third citizen's yard. At his deposition, for example, he described in

---

[3] Another issue with the comparators is that Martinez has not explained their job duties or how their responsibilities were similar to his. In fact, one of the comparators, DeWitt, is actually Martinez's supervisor. And "[s]upervisors typically make unrealistic comparators because . . . employees of higher rank commonly have different job duties or performance standards." *Rodgers v. White*, 657 F.3d 511, 518 (7th Cir. 2011).

some detail how the citizen who claimed that he was rude to her was actually the aggressor.  Docket Entry No. 14-8 at 4.  But there is no dispute that these complaints were made or that Martinez interacted with these citizens.  Therefore, unlike the more common situation in which internal disciplinary violations cited as the basis for a termination may have been issued by the allegedly discriminating supervisor, these external complaints cannot be tied to any discrimination by Texas City.  And the City's reliance on them in deciding how to treat Martinez cannot serve as a sufficient inference of anti-Hispanic animus unless the City treated differently other employees who received similar citizen complaints.  Thus, even in the light most favorable to Martinez, the citizen complaints were a legitimate part of Martinez's work history with Texas City, and none of the three other City employees had a similar history of problems with the public.

In addition, the comparator employees did not have "essentially comparable violation histories," *see Lee*, 574 F.3d at 260, because Martinez had two prior disciplinary infractions.  He presents no evidence that the comparators had any disciplinary problems at all.  Combined with the more significant fact that the comparators' conduct was not "nearly identical" to his own in the month preceding the termination, *see id.*, Martinez has failed to establish a prima facie case of national-origin discrimination.

## IV.  CONCLUSION

For the reasons discussed above, Martinez fails to show that similarly situated non-Hispanics were treated more favorably than he was.  Accordingly, there is insufficient circumstantial evidence to support a Title VII national-origin discrimination claim.  Texas City's Motion for Summary Judgment (Docket Entry No. 8) is **GRANTED**.  A separate final judgment will issue.

**SIGNED** this 21st day of February, 2014.

_____
Gregg Costa
United States District Judge